SWAN v. HOWARD and others.

The East River Insurance Company went into full operation. The great fire of 1835 impaired its capital, but did not render it insolvent. Under the act of 12 February, 1836, the company attempted to fill up its capital by calls; but not succeeding, they made new stock. An objection was taken against them that they had not proceeded according to the statute in requiring specie or current bank bills for such new stock; and that thus they had worked a forfeiture of their charter, and also that they still remained with a diminished capital: *Held* that their charter was not forfeited, nor were they prohibited from transacting business, and that a mortgage taken by them as security for new stock was, as between them and their mortgagor and his voluntary assignee, a valid security.

THIS cause came before the court on exceptions taken to the master's report, relating to a surplus on the sale of mortgaged premises. But the only point of interest that arose was in relation to the East River Fire Insurance Company, and as to whether its charter had become forfeited. A sufficient explanation of its situation appears in the opinion of the court.

*Jan.* 31, 1839.

*Corporated Company.*

Mr. *D. Selden* and *S. A. Foote*, for Howard and wife, and Mott an assignee.

Mr. *J. Anthon*, for the East River Insurance Company.

THE VICE-CHANCELLOR: The East River Fire Insurance Company was duly organized under its charter. It existed as a legal corporate body at the time of the great fire in December one thousand eight hundred and thirty-five. That fire did not render it insolvent. It only impaired its capital to about one-fifth after paying its losses. With this twenty per cent. of its original capital, the company was competent to continue business, although subject to be dissolved upon application, if found expedient. But until such application should be made, the company was capable of transacting business, for it still had a legal existence and vitality. Under the act of 12th February, 1836, the company undertook to fill up its capi-

*October* 7.

tal by calls on the stockholders. These were not met by payments to the requisite amount; and new stock was proposed to be created. In the manner of creating and paying in this new portion of the capital, the provisions of the revised statutes, it is said, have not been complied with. Admitting this to be the fact, still I cannot perceive how the charter is to be deemed forfeited or how the corporation can be dissolved, except upon the ground of expediency, on an application by the directors or officers to this court : 2 R. S. 467.

If, in filling up and receiving payment of the new stock, the directions of the statute have not been complied with, then, so far as the stock has not been actually paid in specie or in current bank bills, the company remains as before with a diminished or impaired capital. But this deficiency or loss of its capital, I repeat, does not seem to me to work a forfeiture of its charter, nor compel the company necessarily to discontinue business. True, the second section of the charter declares that the capital shall be two hundred and fifty thousand dollars, and that it shall not be lawful to commence any business until the whole amount shall be subscribed and paid in the manner above mentioned. But this has reference to the first organization of the company ; and after the company has thus been once formed, its whole capital once paid in, and losses in business occur which reduce the stock below par, it is clearly not intended to prohibit the company from going on until the capital should be made entire by fresh payments or contributions on the part of stockholders. Many moneyed corporations, with impaired capitals, do, nevertheless, proceed with their ordinary business. And the only prohibition they are under is, against declaring dividends while in that state.

Nor do I perceive any thing in the act of the 12th February, 1836, which is prohibitory in this respect. Insurance Companies, reduced to actual insolvency by the " great fire," of course could not go on without first renewing their capitals ; and this law was intended to give them an opportunity of doing so and of preserving their charters. Whenever, therefore, a company in that situation was to be resuscitated, it was necessary to provide for a compliance with the revised statutes in relation to the mode of paying in the capital and the filing of an affidavit, previous to its commencing business, because it is virtually

1839.

SWAN
*v.*
HOWARD.

re-organizing a new company, and hence the propriety of the third section of that act. But this section is rather declaratory than prohibitory ; and so far at least as a corporation, with an impaired capital only, and not insolvent, is embraced by it, it appears to me very clearly not to be prohibitory of the right to proceed and transact business under its charter to the extent of its ability.

In this view of the case, I think the objection which has been taken on the argument, to the legal existence of this corporation and to its power and capacity to make contracts and claim rights in a court of justice, is obviated.

The next question then is, (that, having this legal existence and capacity as a corporation), whether it can claim any benefit from the mortgage which was executed to the company by the defendant, Howard?

This I regard as a question entirely between the corporation and Howard or his assignee, Mott. Whatever of public policy or express legislation there is against the mode pursued by the officers of the company with individuals subscribing for the new stock, in relation to the manner of paying for it, seems to me not the question to be considered by this court. If there is any thing wrong, the parties are *in pari delicto.* Howard has had value for his bond and mortgage ; and the proceeds of the mortgage security are now in this court. This is not a proceeding against him personally, but rather *in rem* against the fund ; and I do not see that Howard is in a position to avail himself of the rule *in pari delicto potior est conditio defendentis,* any more than the company.

The natural justice and equity of the case, as between those parties, is on the side of the company ; and if either be entitled to the money in court, it is the latter.

The exceptions to the master's report are overruled.